DAVIDSON and others vs. HACKETT.

*April 1 — April 20, 1880.*

ATTACHMENT. *(1) Traverse to affidavit: what issue raised?   (2) Order discharging attachment: rule as to reversal.*

1. While, under sec. 2, ch. 130, R. S. 1858, an attachment might issue against a defendant's property, without proof that he was a nonresident or guilty of any of the fraudulent acts named in the statute, other than an affidavit in plaintiff's behalf stating that the affiant *knew or had good reason to believe* that such facts existed, yet, upon a proper traverse of the affidavit, the issue is, whether the alleged fact of fraud or nonresidence existed, and not whether the affiant knew or had good reason to believe in its existence.

2. Where, on trial of such a traverse, the court below finds in defendant's favor, this court will not reverse the order discharging the attachment, except upon a clear preponderance of evidence against such finding.

APPEAL from the Circuit Court for *Jefferson* County.

*Harlow Pease*, for the plaintiffs, who were appellants.

For the respondent there was a brief by *Hall & Skinner*, and oral argument by *Mr. Hall*.

TAYLOR, J.   This is an appeal from an order of the circuit court, dissolving an attachment upon a traverse by the defendant of the affidavit upon which the same issued.   The following is a copy of such affidavit (after the title of the action): "*Alexander Davidson*, being duly sworn, on oath says that he is one of the above named plaintiffs, and that *Patrick Hackett*, the above named defendant, is indebted to the above named plaintiffs in the sum of $503.68, over and above all legal set-offs, and that the same is due upon express contract, with interest from the first day of August, 1877; *and that he has good reason to believe that the defendant has assigned, disposed of and concealed his property, with intent to defraud his creditors.*"

The defendant in due time traversed the affidavit, under

Davidson and others vs. Hackett.

oath, and denied "*that he has, or had,* at the time of the making of said affidavit, assigned, disposed of or concealed, or is, or was at the time of making said affidavit, about to assign, dispose of or conceal his property, or any of it, with intent to *defraud his creditors.*"

Upon the trial of this traverse, the court found in favor of the defendant and dissolved the attachment. The plaintiffs appeal, and allege as error that the court, upon the trial of said traverse, erred in holding that the issue was "whether the defendant had assigned, disposed of or concealed his property with intent to defraud his creditors at the time of making the affidavit," and not whether the party making the affidavit "*had good reason to believe that the defendant had so assigned, disposed of or concealed his property.*" The contention of the learned counsel for the appellants is, that if they were able to show, upon the trial of the traverse, such facts and circumstances as would induce a man of ordinary prudence to believe that the defendant had assigned, disposed of or concealed his property, or some part thereof, with intent to defraud his creditors, then the court should find in favor of the plaintiffs and sustain the attachment, although the other evidence in the case might show that no such assignment, disposal or concealment of his property, or any part thereof, had been made with such fraudulent intent. It was said, upon the argument, that in construing the statute which authorizes a traverse of the affidavit upon which an attachment may issue, the circuit courts of the state differ — some holding, as contended by the learned counsel for the appellants in this case, that when the affidavit is made upon the belief of the party making the same, the issue is whether the party had good reason for his belief; and others holding, as was held by the circuit judge in this case, that the issue in all cases is, whether an assignment, or, etc., had been in fact made, or was about to be made, with intent to defraud, etc. After a careful examination of the statutes of this state upon the subject

of attachments, we are satisfied that the whole current of legislation is adverse to the seizure of the property of a debtor to satisfy his debts until after judgment, and that the proceeding by attachment has always been considered, by the legislature and the courts of this state, a severe and harsh remedy, and only permissible against a resident debtor when he has fraudulently attempted to place his property beyond the reach of the ordinary process of the courts. *Pratt v. Pratt*, 2 Pin., 395; *Whitney v. Brunette*, 15 Wis., 61.

By the statutes of Wisconsin of 1839, p. 165, attachments were allowed to issue in some cases upon the oath of the creditor, and in others the creditor had to satisfy the officer before whom the oath was made, *of the facts* which were required to be stated in the affidavit. Under this statute no traverse of the affidavit was allowed, and the attachment could not be set aside by showing its falsity. See *Mayhew v. Dudley*, 1 Pin., 95. And for this reason the courts required great strictness on the part of plaintiffs in following the exact requirements of the statute. *Lorrain v. Higgins*, 2 Pin., 454; *Quarles v. Robinson*, 2 Pin., 97; *Slaughter v. Bevans*, 1 Pin., 348; *Morrison v. Ream*, 1 Pin., 244; *Merrill v. Low*, 1 Pin., 221. These cases show the extreme care taken by the courts to limit this extraordinary remedy, and confine it with the utmost strictness to the use prescribed in the statute. And in every case where there was not a technical compliance with the statutory requirements, the writ was set aside. The law upon the subject of attachments remained substantially as it was in 1839, until the revision of 1849. Under the revision of 1849, the attachment was allowed to issue without the allowance of any officer, and without the statement of any reason for the belief of the person making the affidavit as to the alleged fraudulent acts of the defendant. The provisions of R. S. 1849 remained in force until the enactment of the code in 1856; and up to that there was no provision of the statutes which authorized the defendant to move to set the same aside

upon the ground that the matters alleged in the affidavit were not true in fact. Section 152 of the code (see Laws of 1856, p. 170) provided as follows: "The defendant may, at any time before the time to answer expires, make a motion before the circuit judge of the proper circuit, to set aside or discharge the attachment on the ground that sufficient cause for granting the same did not exist. Such motion may be made upon the affidavit for the attachment, or additional affidavits on the part of the defendant, controverting the grounds upon which the attachment was issued; and in case the defendant uses additional affidavits, the plaintiff may use additional affidavits on his part to sustain the same; and the plaintiff may, on reasonable notice for that purpose given, require the defendant or other person to appear on the hearing of such motion, and be examined orally touching the grounds upon which said attachment was issued; and if the defendant neglect or refuse to attend as required, the motion to discharge the attachment shall be denied."

The causes for issuing the attachment, under the code of 1856, were the non-residence of the defendant; that he had absconded or concealed himself; that he had been guilty of fraud in contracting the debt or incurring the obligation for which the action was brought; and that he had removed or disposed of his property, or was about so to do, with intent to defraud his creditors. Code, sec. 135. The warrant of attachment was required to be obtained from a judge of the court in which the action was brought, or a county judge or court commissioner. Section 136. The warrant was authorized to issue whenever it appeared by affidavit that a cause of action existed against the defendant, specifying the amount of the claim and the grounds for issuing the same, which must be one of those above specified. See section 137. In the revision of 1858, this code proceeding was changed in some respects, and, in order to set aside the writ on the ground that sufficient cause for issuing the same did not exist, it re-

quired the defendant to traverse the affidavit of the plaintiff, and directed that the issue upon such traverse should be tried by the court in which the action was pending. This proceeding by traverse took the place of the proceeding by motion as provided in section 152 of the code, above quoted. It will be seen, by an examination of all the statutes upon the subject passed by the legislature of this state to the time of the enactment of the revision of 1878, that the writ of attachment was only allowed to the plaintiff in an action upon one or the other of two general grounds — non-residence of the defendant or his fraudulent acts; and, until the revision of 1849, the plaintiff was bound to show the existence of one or the other of these causes before the attachment could issue, and, when it issued on the ground of the fraud of the defendant, to satisfy the officer who issued the same of the existence of such fact or facts before the same could issue. It is true, the proof in such case was *ex parte*, and conclusive if the facts stated in the affidavit fairly tended to prove the fraud; but it was nevertheless the non-residence or fraud which was to be established by the affidavit, and not merely the belief of the person making the affidavit that such fact existed. By the revision of 1849, the writ was allowed to issue upon the affidavit of the plaintiff stating that he had good reason to believe that the defendant was a non-resident, or had been guilty of one or the other of the fraudulent acts specified in the statute; and such affidavit could not be controverted, but, when sufficient in form, was conclusive. By the code of 1856, this arbitrary provision was repealed, and the plaintiff was required to make it appear by affidavit that one of the causes for issuing the same existed, and the writ was to be issued by a judicial officer, to whom such affidavit was to be delivered; and then, in order to obviate the injustice which always follows from permitting the rights and property of the citizen to be interfered with by the use of an extraordinary process, upon the biased and *ex parte* evidence of an interested party, the code provided

Davidson and others vs. Hackett.

that the defendant might deny the existence of the grounds upon which the writ issued, and, if he satisfied the judge of the falsity of the charge made in the affidavit of the plaintiff, after a fair hearing of both parties, the writ should be dissolved, and the defendant's property be restored to him.

The revision of 1858, as amended by chapter 101, Laws of 1859, retained the provisions of the code, in substance, except that it did away with the necessity of having the writ allowed by any officer, and permitted the same to be issued as a matter of course by the clerk of the court in which the action was pending, and substituted the traverse of the affidavit for the motion to dismiss. Whilst the code of 1856 was in force, two cases were decided in this court, arising under its provisions permitting the defendant to move to dismiss the attachment on the ground that sufficient cause for issuing the same did not exist. In both cases the attachment was issued on the ground of the non-residence of the defendant; and in one case the attachment was dissolved on the motion of the defendant on making proof of his residence, and in the other the motion was denied on the ground that the non-residence of the defendant was sufficiently established on the motion. *Cohen v. Burr*, 6 Wis., 200; *Cooper v. Smith*, 8 Wis., 358. Both these cases recognized the fact that the question upon the motion to dissolve was the existence of the grounds alleged in the affidavit upon which the attachment was issued, and not the belief of the person who made the affidavit, nor that the facts showed that the person making the affidavit had good reason to believe the existence of such alleged grounds.

But, independent of any previous legislation upon the subject, or of the jealousy with which the legislative and judicial departments of this state have treated the remedy by attachment, we think it very clear that the provisions of the Revised Statutes of 1858, providing for the traverse of the affidavit upon which the writ issues by the defendant, put in issue the fact of the existence of the grounds alleged therein for issuing

the same, and not the belief of the plaintiff, or the fact that he may have good reasons for believing that the grounds for issuing the same existed.

If we make the proper distinction between the grounds upon which the law authorizes the attachment to issue, and what proof must be made of the existence of such grounds before the attachment can issue, there is no difficulty in giving the statute its proper construction. The existence of certain facts justifies the creditor in attaching his debtor's property before he obtains judgment upon his claim against him, and before it has been judicially determined that he has in fact any just claim against his alleged debtor. These facts are stated in section 2, ch. 130, R. S. 1858, as follows: "(1) That the defendant has absconded or is about to abscond from this state, or is concealed therein, to the injury of his creditors; or (2) that the defendant has assigned, disposed of or concealed, or is about to assign, dispose of or conceal, any of his property, with intent to defraud his creditors; or (3) that the defendant has removed or is about to remove any of his property out of this state, with intent to defraud his creditors; or (4) that the defendant fraudulently contracted the debt, or incurred the obligation, respecting which the action is brought; or (5) that the defendant is a non-resident of this state; or (6) that the defendant is a foreign corporation; or (7) that the defendant has fraudulently conveyed or disposed of his property, or a part thereof, with intent to defraud his creditors."

It is clear that the legislature makes the existence of some one of the facts above stated necessary in order to justify the issuing of the writ of attachment; but as the delay which would necessarily follow if the existence of such facts, or any one of them, were required to be established by judicial inquiry before the attachment issued, might defeat the very object sought to be obtained by the writ, the legislature have said that the writ may issue in the first instance without plenary proof of their existence; that, for the purposes of

issuing the writ and seizing the property of the defendant thereon, it shall be sufficient proof of the existence of such fact or facts if the plaintiff, or some one in his behalf, shall make an *ex parte* affidavit of their existence, or that he has good reason to believe that they do exist, without stating any facts or grounds upon which his knowledge or belief is founded.

The liberality of the legislative requirements previous to the issuing of the writ and the attachment of the defendant's property, is suggestive of the propriety of permitting the defendant to contest the fact of the existence of the reason alleged for its issue.  If the fact does not exist, there is every reason why the defendant should be permitted to set aside the writ.  If he be an honest debtor, a resident of the state, and guilty of no fraud towards his creditors, there is no reason why his property should be subjected to the writ of attachment because an unscrupulous creditor has made a false affidavit; nor should his property be subjected to the writ because false rumors or other circumstances may be proved, which might possibly induce an ordinarily prudent man to swear that he had good reason to believe in the existence of one or more of the facts which justify the issuing of the writ, if, in fact, no fraudulent act has been committed by him. There is every reason, therefore, why the issue upon the traverse should put in issue the fact of the fraud or other cause, and not the belief or good reason for the belief of the plaintiff as to its existence.  The language of the statute itself would seem to leave little doubt as to what is put in issue.

Section 23, ch. 130, R. S., as amended by section 1, ch. 101, Laws of 1859, reads as follows: "In all writs of attachment issued under the provisions of this chapter, it shall be competent for the defendant, by answer verified by his affidavit, to deny the existence, at the time of making the affidavit required to be annexed to the attachment, *of the material*

*facts stated therein, whether such facts be stated upon knowledge or belief of the defendant, or otherwise.*" Section 24, same chapter, provides as follows: " The affirmative of such issue, raised by said answer of the defendant, shall be upon the plaintiff in the writ of· attachment, and it shall be incumbent upon the said plaintiff to prove the statement of facts so traversed, and the trial of such issue shall be by the court in all cases."

What is meant by the words " material facts," as used in section 23, above quoted? Clearly, the facts which the law says shall exist in order to justify the writ.   These facts are the existence of a debt arising upon contract, and the fact that the defendant is a non-resident of the state, or that he has committed some one or more of the fraudulent acts enumerated in the statute.   It clearly is not a material fact, within the meaning of that section, whether the person making the affidavit knows or has good reason to believe that such facts exist.

It is admitted that if the person making the affidavit swears that he knows the fact exists, then, upon the traverse, the plaintiff must show that it does exist, or the writ must be dissolved; but it is said if he only swears that he has good reason to believe that it exists, then the issue is whether he has any such good reasons for belief, and not the existence of the fact itself.   If the construction· contended for by the learned counsel for the appellant is the true one, then we would have this result:   If the plaintiff swore that he knew the defendant was a non-resident, the defendant might admit his non-residence, and yet defeat the attachment by showing that the plaintiff swore falsely as to his knowledge.   So, if the issue be upon the good reasons to believe, then the fact that the defendant had in fact fraudulently disposed of his property would be immaterial; and if the plaintiff could not, on the traverse, show that when he made the affidavit he had such knowledge of the fraudulent acts of the defendant as amounted

to a good reason for believing in their existence, the admission of the defendant that, when the affidavit was made, he had in fact been guilty of the whole catalogue of frauds mentioned in the statute, would not defeat his right to have the attachment dissolved. If there were any doubts as to the words "material facts," as used in said section, the following words, "whether such facts be stated upon knowledge or belief of the deponent, or otherwise," render their meaning absolutely certain.

By referring to section 2 of said chapter it will be seen that the only facts which the law allows the party making the affidavit to state upon belief, are the facts above enumerated as the grounds for issuing the writ, viz., the non-residence or fraudulent acts of the defendant. It follows necessarily that the material facts spoken of must mean such facts as the law says may be stated upon the belief of the person making the affidavit. We have no doubt the intention of the legislature was to permit the plaintiff to have his writ of attachment in actions upon contract, if he can conscientiously, or if he will, whether conscientiously or not, swear that the defendant is indebted to him in a certain sum arising upon contract, and that he knows or has good reason to believe in the existence of some of the facts named in the statute; but that he does so at the peril of being able to establish the fact stated in his affidavit, if the defendant shall deny its existence, under oath; and if he fails to establish it he must pay the costs and damages the defendant may suffer by reason of the attachment of his property.

The requirement of the statute that the plaintiff shall swear in his affidavit that he knows or has good reason to believe in the existence of one or more of the material facts which are grounds for an attachment, is to put a restraint upon the conscience of plaintiffs in making use of this writ; but when the formal affidavit is made, it is conclusive of the right of the plaintiff to have the writ issued, and it cannot thereafter

be dissolved, when regularly issued, unless the defendant shall deny upon oath that he has been guilty of the fraud alleged, or shall deny his non-residence, if the ground alleged is that he is a non-resident. Upon all other matters the affidavit is conclusive in that action. If he is in fact guilty of the fraud charged in the affidavit, or is in fact a non-resident, and the plaintiff, or some one in his behalf, has sworn, without any knowledge of the fact, that he had been guilty of such fraud, or that he was such non-resident, he cannot avoid the attachment for that reason. The person making the affidavit might be convicted of perjury, perhaps, for swearing to the existence of a fact of which he was entirely ignorant, but that would be no reason, under the statute, for dissolving an attachment of the defendant's property, if he was in fact a non-resident or guilty of the fraudulent conduct stated in the affidavit, and which in law would justify its attachment at the suit of the plaintiff. This view of the law was, we think, sustained in *Noonan v. Pomeroy*, 14 Wis., 568. Although the report of the case does not show that the point made in this case was considered in that, yet it does appear that the affidavit stated, as it does in this, that the plaintiff " had good reason to believe," etc.; but this court passed upon the question of fact as to the fraudulent acts of the defendant, and not as to whether plaintiff had good reason to believe in the existence of such facts.

Upon the real issue on the traverse, the evidence was conflicting; still, it is the duty of this court, upon an appeal from the order made on the traverse, to review the evidence, and reverse if we are satisfied that the finding of fact is not sustained by the evidence. See *Noonan v. Pomeroy, Cohen v. Burr*, and *Cooper v. Smith, supra*. After a careful examination of the evidence, we are unable to say that there is such a preponderance against the finding of the circuit judge as would justify a reversal of the order upon the merits.

*By the Court.*— The order of the circuit court is affirmed.