HUBBARD, Appellant, vs. HALEY and another, Respondents. HUBBARD, Respondent, vs. SHOVE, imp., Appellant.

*May 3 — June 24, 1897.*

(1) *Attachment: Practice.* (2) *Appeal: Pleading.* (3–7) *Contracts: Guaranty: Demand: Corporations:* Ultra vires: *Notice of default: Agency: Estoppel: Damages.*

1. A writ of attachment is not entirely void because issued to collect a debt part of which was not due, even though all the statutory requisites of an attachment for a debt not due had not been complied with, the debtor's remedy being limited to a modification of the writ and a release of the property as to the debt not due, under sec. 2744, R. S.

2. Defects in the complaint constitute no ground for reversal of a judgment in plaintiff's favor where they might have been cured at any time by amendment conforming the pleading to the facts conclusively proved by evidence admitted without objection.

3. Denial of all liability under an agreement to deliver annually for three years a certain quantity of manufactured goods to be selected rendered unnecessary a demand for the goods, specifying

Hubbard vs. Haley and another.

kinds and prices, as they became due, as a condition of charging a guarantor of performance.

4. By an agreement for the sale of stock in a corporation the purchaser, H., was to make payment in goods of certain kinds to be manufactured by the corporation. Delivery of the goods was guaranteed by the corporation, and performance of the contract both by H. and by the corporation was guaranteed by S. In an action against S. on his guaranty, *held*, that he could not question the power of the corporation to make the contract.

5. The contract of guaranty by the corporation in such case was executed by H. as president, but it appeared that the officers and directors knew of the making thereof at the time it was made or soon thereafter; that the corporation through its officers recognized its validity and made payments thereon after H. severed his connection with the organization; and that the corporation was beneficially interested in the consideration. *Held*, that the corporation was estopped to deny H.'s authority.

6. No notice of the default of an original promisor is necessary to render liable a guarantor of payment or performance; the latter's promise being an absolute, not a conditional one.

7. Where, in an action for breach of a contract for the delivery of a certain amount of goods annually for three years, to be selected by the plaintiff, the complaint declared merely for successive defaults as the goods became due, and did not allege denial of liability, no recovery could be had for failure to deliver goods not due at the time of the commencement of the action.

APPEALS from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

Action to recover on three past-due promissory notes, executed by defendant *Haley*, in favor of plaintiff, guaranteed by defendant *Shove;* also damages for nonfulfillment of a contract for the payment to plaintiff of $10,000 in manufactured goods of the defendant corporation, the Manitowoc Manufacturing Company; *Haley* being a principal promisor, the corporation a principal promisor or guarantor, and *Shove* a guarantor of the manufacturing company. A writ of attachment was sued out against the property of *Shove* on the ground that he had assigned, disposed of, and concealed his property, and was about so to do, with intent to

hinder and defraud his creditors. The allegations of the affidavit were duly traversed by *Shove*, and he also answered to the complaint, by which the issues covered by the findings were raised. All the issues were tried by the court. A motion was made to quash the writ on the ground that, by the complaint, a part of the debt was not due when the action was commenced, and the requisites to the issuance of such writ were not complied with. The motion was denied. The result of the trial of the issues formed by the affidavit for the writ of attachment, and the traverse, was that the facts alleged in such affidavit were found to exist, and the attachment was sustained. The result of the trial of the issues formed by the complaint and answer of *Shove* was that the court found, in addition to formal matters not necessary to refer to, in substance as follows:

(1) March 11, 1890, the corporation was engaged in the manufacture and sale of furniture. Plaintiff and defendants *Haley* and *Shove* were stockholders and directors. *Shove* was the principal stockholder and president of the T. C. Shove Banking Company. The manufacturing company was heavily indebted to the bank, and the greater part of plaintiff's stock in such company was pledged to such bank for debts of such company; and defendants *Haley* and *Shove* were familiar with the financial condition of such company, owned a majority of its stock, and controlled its business affairs.

(2) On the date above mentioned, an agreement in writing was made between plaintiff and *Haley*, whereby the former sold to the latter his stock in the manufacturing company, subject to the lien of the bank thereon, and agreed to give *Haley* the latter's two notes owned by plaintiff, aggregating $9,500.

(3) By the said agreement, *Haley* further promised to discharge plaintiff from all personal liability as surety for the manufacturing company, or to such company as a member

of the firm of Hubbard & Haley, and agreed to pay plaintiff $300 within ten days, $300 within sixty days, and $400 within four months, with interest at seven per cent. per annum, according to three promissory notes given with such agreement; and, further, to pay plaintiff $3,000 within one year, $3,000 after one year and within two years, and $4,000 after two years and before three years, such three payments to be in manufactured goods of the manufacturing company, selected by plaintiff, not more than one half of the annual amount thereof to be required, however, in each six months of any year; the prices of the goods the first year to be the same as prices made to the American Desk & Seating Company, all changes in prices thereafter to be governed by any change in the price of raw material; the price of goods selected not priced to the American Desk & Seating Company to be the lowest job price of similar goods sold to other jobbers, and with similar rebates.

(4) It was further provided that the delivery of the goods should be guaranteed by the manufacturing company by its acceptance of the terms of the contract, and agreement to fill the orders of plaintiff for goods, and charge the same to *Haley*, and that the performance of the contract by *Haley* and by the manufacturing company should be guaranteed by the defendant *Shove* for a valuable consideration to be paid by *Haley*.

(5) The contract was duly executed and delivered, and defendant *Shove*, before such delivery, knew of its provisions and agreed thereto; and such agreement was a material part of the transaction.

(6) Prior to such delivery, the manufacturing company, by its president, made thereon a written agreement, as follows:

"In consideration of one dollar ($1) to it in hand paid, the receipt whereof is hereby admitted, and on account of other valuable considerations, the Manitowoc Manufacturing Company does hereby guarantee the fulfillment of the

above and foregoing contract so far as the sale and delivery of its goods, as in said contract specified, is concerned only, and agrees to deliver said goods at the times, to the persons, and under the circumstances specified in said contract, and to look to *F. H. Haley* solely for the payment of the same.

" Dated this 11th day of March, 1890.

" Executed in duplicate.

" Manitowoc Manufacturing Company.    [Seal.]
" F. H. Haley, President.    [Seal.] "

(7) *Shove*, on the instrument, prior to such delivery, executed the following:

" In consideration of one dollar ($1) to me in hand paid by the said *F. H. Haley*, and on account of other valuable considerations, I do hereby guarantee the fulfillment of the above foregoing contract, in so far as the payment of $1,000 is concerned by the said *F. H. Haley*, and by the said Manitowoc Manufacturing Company in so far as the delivery of the goods is concerned only; and it is intended to include in this guarantee the payment of the three notes to be given by the said *Haley*, aggregating the sum of $1,000, as specified in the foregoing guarantee only.

" Witness my hand and seal, this 11th day of March, 1890.

" Executed in duplicate.        T. C. SHOVE.    [Seal.] "

(8) At the time of making the contract, a price list of goods being sold to the American Desk & Seating Company was on file in the office of the manufacturing company, and there has been no substantial change in such prices, or change in the cost of producing such goods, or in the jobbing prices for such goods, and such goods were worth the money prices fixed therefor by contract. The failure to deliver the goods was equivalent to withholding the amount of money represented thereby.

(9) The notes have not been paid, though due demand therefor was made, and defendant *Shove* had due notice thereof, and of *Haley's* default. The amount due is $1,384.

(10) The officers and directors of the manufacturing company knew of the aforesaid contract when made, and such company delivered thereon $2,405.73 worth of goods during the two years following its execution.

(11) Plaintiff ceased to be an officer in such company after the making of the contract, but remained in its employ. The stock sold to *Haley* was surrendered by him to the company, and re-issued, part to *Shove*, and part to other persons, who gave notes therefor to the bank, or to *Shove*, for debts of the manufacturing company; so that *Shove* and such company had the full benefit of such stock.

(12) February 1, 1892, plaintiff demanded of the manufacturing company goods under the contract, of which a large amount was then due. It refused to comply with such demand. About April 8, 1892, plaintiff renewed such demand, and the company refused to recognize any liability whatever under the contract.

(13) The property of the manufacturing company, after the last demand aforesaid, was destroyed by fire. It thereafter made an assignment for the benefit of its creditors, and is wholly insolvent. At the time of such assignment, the banking company was a principal creditor, and *Shove* knew of the assignment, and of the assignee's refusal to deliver goods under the contract. *Haley* left the county before, and his residence was not known to plaintiff when this action was commenced.

(14) No false representations were made to induce defendant *Shove* to sign the contract.

(15) Plaintiff complied with all the conditions of the contract requisite to entitle him to receive the goods of the manufacturing company.

(16) *Shove* and such company were parties to the contract between plaintiff and *Haley* as original promisors, although in form as guarantors.

(17) *Shove's* liability on the contract is not affected by the question of whether such company was bound or not.

Hubbard vs. Haley and another.

(18) *Shove's* knowledge of the business of such company was such that no formal notice of its default was necessary in order to charge him in this action.

(19) Plaintiff cannot recover the last $2,000 of the instalment of $4,000, because it was not due when the action was commenced.

(20) Plaintiff is entitled to judgment against defendant *Shove* for $8,213.27, with costs and disbursements.

Appropriate exceptions were filed to the findings and conclusions of the trial court, to raise the questions discussed in the opinion. Judgment was entered upon the findings. Plaintiff appealed from that part of the judgment which refused a recovery of the last instalment of $2,000, and *Shove* appealed from all of the judgment except for the amount due upon the three notes aggregating $1,000, with the accrued interest thereon.

*J. S. Anderson*, attorney, and *W. H. Timlin*, of counsel, for the plaintiff, argued, among other things, that no notice to the guarantor on a guaranty of this kind was necessary. *Mallory v. Lyman*, 3 Pin. 443; *Day v. Elmore*, 4 Wis. 190; *Heyman v. Dooley*, 77 Md. 162; *Clay v. Edgerton*, 2 Am. Rep. 422; *Wise v. Miller*, 45 Ohio St. 388. The authorities cited by the defendant go no farther than to hold that failure to give notice to the guarantor is available as a defense when he is damaged thereby, and to the extent to which he is so damaged. *Furst & Bradley Mfg. Co. v. Black*, 111 Ind. 308; *Burrow v. Zapp*, 69 Tex. 474; *Voltz v. Harris*, 40 Ill. 155; 1 Brandt, Suretyship & G. § 202.

For the defendant *Shove* there were briefs by *Felker, Goldberg & Felker*, attorneys, and *F. A. Gilman*, of counsel, and oral argument by *Mr. Gilman*. They contended, *inter alia*, that the guaranty in this case was collateral. *Virden v. Ellsworth*, 15 Ind. 144; *Milroy v. Quinn*, 69 id. 410; *Gaff v. Sims*, 45 id. 264; *Dwight v. Williams*, 4 McLean, 582; *White v. Case*, 13 Wend. 543; *Eddy v. Stantons*, 21 id. 255; *Howe v. Nickels*, 22 Me. 175; *Smith v. Loomis*, 72 id. 53, 57; *Swift v. Beers*,

3 Denio, 70; *Nellis v. Clark*, 20 Wend. 27; *Dedham Bank v. Chickering*, 4 Pick. 314. *Shove* was entitled to notice of the default both of the Manitowoc Mfg. Co. and of *Haley. Sandford v. Norton*, 14 Vt. 228; *Train v. Jones*, 11 id. 446; *Knapp v. Parker*, 6 id. 642; *Peck v. Barney*, 13 id. 96; *Noyes & Co. v. Nichols*, 28 id. 175; *Sylvester v. Downer*, 18 id. 35; *Bull v. Bliss*, 30 id. 130, 133; *Beebe v. Dudley*, 26 N. H. 249, 253; Brandt, Suretyship & G. §§ 92, 97, 98; Baylies, Sureties & G. 198, 200, 202, 203; *Clark v. Remington*, 11 Met. 364, 375; *Jordan v. Dobbins*, 122 Mass. 168; *Taussig v. Reid*, 145 Ill. 488.

MARSHALL, J.    The motion to quash the writ of attachment was properly denied.    True, sec. 2731, R. S., provides that a writ of attachment may issue for a debt not due, upon an affidavit stating the facts in that regard; but there is no controversy here that the debt in question was not due, except $2,000; hence, at most, the writ was improperly issued only as to that amount.    In any event, it was not wholly void.    While it is the law that if a writ of attachment be issued and an action commenced for a debt no part of which is due, and the statutory requisites are not complied with, the writ should be quashed on motion and the action dismissed (*Gowan v. Hanson*, 55 Wis. 341), where a part of the debt is due, and part not due, the writ must stand as to the former, and be dismissed or modified, on proper motion, as to the latter.    *Levy v. Millman*, 7 Ga. 167; *Danforth v. Carter*, 1 Iowa, 546; Drake, Attachment, § 33.    As intimated in *Danforth v. Carter*, the motion to quash is in the nature of a general demurrer, and the rule is that where the pleader attempts to state two causes of action and fails as to one, a general demurrer to the whole complaint must be overruled. So here, treating the facts set forth in the complaint as part of the proceedings on the attachment, the motion did not distinguish between that part of the debt which was due

and the part not due; and, as the writ was sufficient as to the former, the motion as to the whole was properly denied. The foundation for a writ of attachment under the statute is a proper affidavit; that being sufficient on its face, the right to the writ is absolute. *Davidson v. Hackett*, 49 Wis. 186. The giving of the bond is not essential to the issuance of the writ, but is to its execution and to the maintenance of the proceedings. R. S. sec. 2732. So, at most, the remedy of the defendant here, on its appearing that a part of the debt was not due, if such were the fact, was confined to a motion for a modification of the writ, under sec. 2744, R. S., on that ground, and a release of the property from the attachment as to the debt not due, because of the failure to give a proper bond.

Under the familiar rule that the findings of the trial court as to questions of fact cannot be disturbed unless contrary to the clear preponderance of the evidence, we are unable to see any justification for disturbing the findings of fact in this case, either as to the issue formed by the affidavit for the writ of attachment and the traverse thereto, or the issues formed by the complaint and answer. Much time might be spent referring in detail to the evidence found in the record bearing on the findings of fact excepted to by appellant *Shove*, but it is not deemed necessary or advisable so to do; hence we rest the case on this subject by stating the conclusions to which we have arrived; that we have carefully examined the evidence as to each particular fact; that it is quite clear from such examination that the trial court had a legitimate basis for its conclusions as to each such fact; and, keeping in mind that the circuit judge had a far better opportunity for drawing the correct inferences from the evidence than is possessed by the appellate court, that we cannot say there is a clear preponderance of the evidence against his findings of fact, or any of them.

Several questions are discussed in appellant's brief in a

general way, without being directed to any distinct assign-
ment of errors. So, to determine the particular errors re-
lied upon from such discussion is not without difficulty.
Some defects in the complaint are claimed to exist going to
the subject of whether there was a default on the part of the
original promisor or promisors so as to render the guarantor
*Shove* liable; but the evidence admitted without objection
conclusively shows that the manufacturing company denied
all liability under the contract. That made a demand of
the company for goods, specifying kinds and prices, as the
debt fell due, unnecessary. Any defect in the complaint in
that regard could have been cured by amendment on the
trial, or at any time on application, without prejudice to the
defendant. Therefore such defects, if any there are, consti-
tute no ground for reversal of the judgment. *Haney v. The
Rosabelle*, 20 Wis. 247; *Forcy v. Leonard*, 63 Wis. 353.

The point is made and pressed with seriousness that the
contract on the part of the manufacturing company was
*ultra vires;* hence that the guarantor *Shove* was not bound.
That presents several questions: First. Did the corporation
have power under its charter to make the contract? Sec-
ond. If there were a want of corporate power, can defendant
*Shove* object on that ground? Third. Was *Haley* authorized
to make the contract in its behalf? Fourth. If not origi-
nally authorized, was his act subsequently ratified by the cor-
poration? Fifth. If the contract were not binding on the
corporation, does that fact relieve the guarantor from lia-
bility?

Not all of these questions need be considered. The ques-
tion of whether the corporation had power to make the con-
tract is immaterial, because the doctrine applies that neither
the corporation, nor any private person for it or on his own
behalf, can defend successfully on that ground.

The subject of under what circumstances and by whom
the doctrine of *ultra vires* can be invoked against a corpora-

tion that has exceeded its powers in the making of contracts has been recently fully discussed in this court in *John V. Farwell Co. v. Wolf*, *ante*, p. 10, where the rule was laid down and supported by numerous decisions of other courts, that, if a corporation transgress its power in the making of a contract, the offense committed is against the sovereignty of the state by which it is permitted to have existence, and, except in particular cases of which this is not one, neither party to the contract can invoke the doctrine of *ultra vires* to avoid it, but the sole remedy is a proceeding to punish the corporation by ousting it from its corporate franchise, and the sole responsibility of applying such remedy is vested in the sovereignty against which the offense is committed. So, it follows, as stated, that whether the Manitowoc Manufacturing Company had power to make the contract or not is immaterial to this case.

The third question suggested is immaterial, because the fourth must be answered in the affirmative. It conclusively appears that the officers and directors of the corporation knew of the making of the contract at the time it was made, or soon thereafter; that the corporation, through its officers, after *Haley* severed his connection with the organization, recognized the validity of the contract for a considerable length of time, and made payments thereon; and the court found as a fact that the corporation was beneficially interested in the consideration of the contract, which consideration was fully paid by plaintiff by turning over his stock, the avails of which went largely to the corporation; hence, it cannot now successfully allege want of authority to make the contract. This rests on elementary principles of estoppel by conduct, so well understood and so frequently applied that no citation of authority is considered necessary to justify their application to the facts of this case.

It is further contended that defendant *Shove* cannot be held liable for want of notice of the default of the principal prom-

isor or promisors. He, in terms, guaranteed the performance of the contract on the part of the manufacturing company. The guaranty was for the delivery of the goods in accordance with the terms of the contract. Guaranties of performance and of payment are placed upon the same ground. They are absolute, not collateral promises; hence no notice of the default of the original promisor is necessary. Such was the decision of this court at a very early day (*Mallory v. Lyman*, 3 Pin. 443), and it has not since been departed from. Unlike the contract of an indorser, there is no condition as to demand and notice of default annexed to a contract of guaranty of payment or of performance. Such a guaranty is an absolute promise that the principal will perform in accordance with the provisions of his contract. It is as absolute in respect to such performance as the promise of the principal; hence it is the business of the guarantor to inform himself as to the conduct of his principal, and, in an action against the former, the facts essential to a recovery are just the same as in respect to the latter. There is no difference. That there is some conflict of authority on this question is recognized, but it is considered that the true rule is as stated, and certainly it has too long prevailed here to be disturbed, even if, as an original proposition, any good reason can be given for such disturbance, and none is perceived. When a guarantor makes an absolute promise that any particular thing shall be done, he thereby assumes an active, absolute duty to see that it is done, and must, at his peril, perform the promise. While it is true that the guarantee, from his situation as such, possesses better means of knowing of the default of the principal than the guarantor, the latter has ample means of knowing the facts, and must inform himself, and not rely upon the guarantee, who owes no duty to the guarantor except to act in the utmost good faith and not be guilty of laches to his prejudice.

The foregoing, it is believed, covers all the questions which

Hubbard vs. Haley and another.

require special notice on defendant *Shove's* appeal. Other questions are discussed in the briefs of counsel, and have been considered, but no reversible error is discovered therein, or reason for further discussion perceived.

On plaintiff's appeal the question is presented of whether the record shows an entire breach of the contract, so as to warrant a recovery for damages for the last instalment of $2,000. The complaint does not allege an entire breach and repudiation of all liability under the contract; neither is there any finding of facts in that regard. Plaintiff declared for successive defaults in the payment of sums as they became due,— that is all. Hence it is quite clear that a final breach was neither alleged, nor any facts found to warrant a recovery for such breach, so as to bring the case within the familiar rule that, if the breach of a contract be final and conclusive, damages may be recovered, prospective as well as those suffered up to the time of the commencement of the action. 3 Parsons, Cont. (8th ed.), *189; *Remelee v. Hall*, 31 Vt. 582. The weakness of plaintiff's position is that while he asked for judgment covering prospective damages, as well as those already accrued, the facts alleged do not constitute a final breach. There is no allegation of denial of liability, but simply of a refusal to deliver the goods that had become due. It cannot therefore be said that damages for failure to deliver goods not due were caused from the breach complained of. It is absolutely necessary to a recovery of prospective damages that they proceed from the cause of action set forth in the complaint. These reasons are considered sufficient to warrant the conclusion reached by the trial court that, as to the $2,000 of the last instalment of $4,000, no damages had accrued up to the time of the commencement of the action from any facts alleged in the complaint, or found to exist within the issues made by the pleadings.

*By the Court.*— The judgment of the circuit court is affirmed on both appeals.